IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

JASON J. GUZMAN,          )    CIV. NO. 09-00076 SOM/BMK
                       )
       Plaintiff,       )    ORDER GRANTING IN PART
                       )    DEFENDANT'S MOTION FOR
   vs.               )    SUMMARY JUDGMENT
                       )
BLOCKBUSTER, INC; JOHN DOES  )
1-10; DOE ENTITIES 1-10;    )
                       )
       Defendants.      )
_____)

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

I.        INTRODUCTION.

       Plaintiff Jason J. Guzman was fired by Defendant Blockbuster, Inc., after it discovered that Guzman had lied on his employment application. Guzman argues that Blockbuster fired him not because of his lie, but because he had filed a sexual harassment charge against his supervisor. Finding no evidence that Guzman was fired in retaliation for the charge, this court dismisses Guzman's Title VII retaliation claim. This court orders further briefing on this court's jurisdiction over the remaining state law claims.

II.       BACKGROUND.

       On September 19, 2001, Guzman applied to be a customer service representative at a Blockbuster store where his friend, Jerry Alerta, was the Store Manager. Guzman Decl. ¶¶ 3,4. Guzman filled out an electronic version of the application at the

store.  Id. ¶ 7.  The application asked, "Do you have a criminal record?"  Ex. 1, attached to Def.'s Concise Statement.  The application further explained that "conviction of a crime, or pleading guilty or no contest to a criminal charge, will not necessarily disqualify you from the job for which you are applying.  Each conviction or plea will be considered with respect to time, job relatedness and other relevant factors."  Id.  The application further asked, "Have you been convicted of, [pled] guilty to, or [pled] no contest to a felony within the last 5 years?"[1]  Id.  Roughly five months earlier, Guzman had been convicted of burglary in the first degree, sexual assault in the second degree, and sexual assault in the fourth degree.  Ex. 2, attached to Def.'s Concise Statement; Ex. A to Ex. 3, attached to Def.'s Concise Statement.

Before answering these questions, Guzman asked Alerta, who knew of Guzman's convictions, if his conviction history would affect his employment chances.  Ex. C at 42-45, attached to Pl.'s Concise Statement.  Alerta responded that Blockbuster would not check the accuracy of his statements and suggested that Guzman answer "no" to the question of whether he had been convicted of

_____

[1]Guzman attached an application form that asks, "Have you been convicted of any crime in the last 7 years?  If you indicated 'Yes' please describe."  Ex. R, attached to Pl.'s Concise Statement.  The divergence from the form Blockbuster submits is irrelevant to the claims asserted.  Guzman signed Blockbuster's version of the application.

any felony within the past five years.  Id.  Guzman indicated on

the application form that he had not been convicted of any

felony.  Ex. 1, attached to Def.'s Concise Statement.

Alerta interviewed Guzman for the customer service

position about a week after Guzman had filled out the

application.  Ex. C at 47, attached to Pl.'s Concise Statement.

During the interview, Guzman signed a hard copy of the

application that he had filled out previously.  Id.  Above the

signature line, the application stated:

> I declare that the information provided by me
> in this application is true, correct, and
> complete to the best of my knowledge.  I
> understand that if employed, any
> falsification, misstatement or omission of
> fact, in connection with my application,
> whether on this document or not, may result
> in immediate termination of my employment.

Ex. 1, attached to Def.'s Concise Statement.  Guzman was hired as

a customer service representative at Blockbuster's Kapiolani

store.  Guzman Decl. ¶ 6.  Alerta did not inform anyone about

Guzman's convictions.  Ex. C at 47-49, attached to Pl.'s Concise

Statement.

In 2003, Guzman transferred to Blockbuster's Kahala

store.  Guzman Decl. ¶ 7.  At the Kahala Blockbuster, he became

romantically involved with Larissa Canida,[2] the Store Manager at

_____

[2]Guzman's declaration and memorandum state that he was
romantically involved with a Larissa Candia.  See generally
Guzman Decl. ¶ 14 ("Defendant's Human Resource Manager Carolyn
Saiki interviewed Store Manager Larissa Candia."); Memorandum at

Blockbuster Hawaii Kai's store. <u>Id.</u> The relationship ended after about six months, and, in late 2004, Guzman began to work at Blockbuster's Piikoi store. <u>Id.</u> ¶ 9. Guzman dated the Store Manager at the Piikoi store, who became pregnant. Ex. L, attached to Pl.'s Concise Statement. Apparently because Blockbuster had an anti-dating policy, Guzman asked to be transferred to Blockbuster's Kamehameha Shopping Center store. <u>Id.</u> In June 2005, he transferred to the Kamehameha store. Guzman Decl. ¶ 10.

At some point, Canida, Guzman's former girlfriend,[20] became the Kamehameha Store Manager.[3] <u>Id.</u> ¶ 11. As the Kamehameha Store Manager, Canida allegedly questioned Guzman repeatedly about their past relationship and cried about their break up. <u>Id.</u> Around November 20, 2005, Canida emailed Guzman, identifying herself as "your boss" and stating that "we are [messed] up," and "I know you are dealing with [problems] and even though you said otherwise, I know this baby was not

---

20. This appears to be a misspelling, as Canida signs her affidavit as "Larissa Canida." Canida Affid., attached to Def.'s Concise Statement. The court refers to her as "Canida."

[3]It is unclear whether Guzman transferred to the Kamehameha store before Canida, or whether Guzman transferred to the Kamehameha store after Canida was already working there. <u>Compare</u> Ex. Q, attached to Pl.'s Concise statement (noting that Guzman agreed to transfer to a store that was supervised by Canida) <u>with</u> Guzman Decl. ¶ 11 (saying that Guzman had worked at the Kamehameha store for two months before Canida transferred to that store).

planned." Ex. 6, attached to Def.'s Concise Statement; Ex. L at 00044, attached to Pl.'s Concise Statement. Canida was apparently upset that Guzman was continuing his relationship with the Piikoi Store Manager.

On November 28, 2005, Guzman submitted a sexual harassment complaint to the Regional Human Resource Director, Carolyn Saiki, complaining about Canida's conduct. Guzman Decl. ¶ 13; Saiki Decl. ¶¶ 2-3. Saiki says that she suspended Canida the same day and began an investigation, Saiki Decl. ¶ 6, although Saiki completed an Employee Separation Form stating that Canida was being fired for having harassed a subordinate the next day, November 29, 2005. Ex. 12, attached to Def.'s Concise Statement. On November 30, 2005, apparently unaware that she was being fired, Canida called Saiki and explained that she had emailed Guzman because she had discovered that he had lied on his employment application. Ex. F, attached to Pl.'s Concise Statement.

On December 2, 2005, Saiki asked Guzman to permit a criminal background check. Saiki Decl. ¶ 9. When Guzman refused, Saiki placed Guzman on paid suspension for failure to cooperate with an investigation. Ex. 7, attached to Def.'s Concise Statement; Ex. F, attached to Pl.'s Concise Statement. Guzman consented to a background check three days later, but remained on suspension. Ex. F, attached to Pl.'s Concise

Statement.

On December 14, 2005, after receiving the results of the background check, the Blockbuster Compliance Group directed Saiki to fire Guzman.  Id.  Saiki filled out an Employee Separation Form on that date stating that Guzman was being fired for having lied on his application about felony convictions.  Ex. 18, attached to Def.'s Concise Statement.  On December 19, 2005, Saiki tried to meet with Guzman to tell him he was being fired, but he was allegedly in training and not able to come the office until December 22.  Ex. F, attached to Pl.'s Concise Statement. On December 20, 2005, Canida received notice that she had been fired for sending the email to Guzman.  Turner Decl. ¶ 15.  On December 22, 2005, Saiki informed Guzman that he was being fired because of the results of his background check and because he had lied on his application.  Ex. F, attached to Pl.'s Concise Statement.

Guzman filed a complaint with the Hawaii Civil Rights Commission and the Equal Employment Opportunity Commission, alleging that he had been sexually harassed at work and had been unfairly treated.[4]  Exs. 13 & 14, attached to Def.'s Concise

---

[4]Guzman claims that he submitted a Complaint to the Hawaii Civil Rights Commission in December 2005, and filed the same Complaint with the EEOC.  Guzman Decl. ¶ 26; Concise Statement ¶ 35 ("On 12/28/05 Pl filed an HCRC complaint which was dual filed with the EEOC pursuant to a work sharing between the two government."). The exhibits before the court indicate that he filed complaints on April 8, 2006.

Statement.  He alleged that he was suspended and terminated in retaliation for his sexual harassment charge.  <u>Id.</u>  By December 2008, both agencies had issued Guzman right-to-sue letters.  Ex. 15, attached to Def.'s Concise Statement; Ex. N, attached to Pl.'s Concise Statement.

In January 2009, Guzman filed suit in state court.  The action was removed to this court.  Guzman asserts four counts. In Count I, Guzman asserts retaliation in violation of Title VII of the Civil Rights Act and Hawaii law.  In Count II, Guzman asserts discrimination based on his arrest and court record, in violation of Hawaii law.  In Count III, which was dismissed by stipulation of the parties, Guzman claims intentional infliction of emotional distress.  In Count IV, Guzman asserts breach of implied contract.  Blockbuster moves for summary judgment on Counts I, II, and IV.

III.    <u>STANDARD OF REVIEW.</u>

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  <u>Miller v. Glenn Miller Prods., Inc.</u>, 454 F.3d 975, 988 (9th Cir. 2006) (internal quotations and brackets omitted).

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2) (effective Dec. 1, 2009).  To withstand a properly made and supported motion for summary judgment, the opposing party must set forth evidence showing that there is a genuine issue of material fact in dispute.  Fed. R. Civ. P. 56(e)(2).  Summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Catrett, 477 U.S. at 322.  When the opposing party fails to make such a showing, there is no genuine issue of material fact, as "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 322-23.  In such cases, summary judgment should be granted.

IV.      ANALYSIS.

       A.   Guzman Fails to Establish a Title VII Claim.

       Guzman claims that Blockbuster retaliated against him for reporting that Canida, with whom he had had a previous relationship, sexually harassed him.  He says that Blockbuster retaliated by over-scrutinizing his work, by refusing to

investigate his sexual harassment complaint, by suspending him, and by firing him.  Compl. ¶ 41; Pl.'s Mem. Opp. Mot. Summ. J. at 20-21.

Blockbuster responds that it investigated Guzman's sexual harassment claim, and that he was suspended and terminated because he had failed to comply with an investigation and lied on his employment application.

Guzman's Title VII claim fails.  Although Guzman has established a prima facie case with respect to his termination, he has not demonstrated that Blockbuster's asserted reason for termination was mere pretext.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Title VII also forbids "discriminat[ion] against" an employee who has opposed any unlawful employment practice or who has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing relating to prohibited discrimination. 42 U.S.C. § 2000e-3(a).  Thus, "Title VII prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be either opposing an act of discrimination made unlawful by Title VII ('the opposition clause'), or participating in an investigation under Title VII ('the participation clause')."  Hunt v. Nebraska Public Power

Dist., 282 F.3d 1021, 1028 (8th Cir. 2002). Accord 42 U.S.C.

§ 2000e-3(a); E.E.O.C. v. Creative Networks, LLC, No. 05-3032,

2010 WL 276742, at *5 (D. Ariz. Jan 15, 2010) (noting that

section 2000e-3(a) makes it unlawful for an employer to

discriminate against any individual that opposed an employment

practice made unlawful by Title VII).

To establish a prima facie retaliation claim, a

plaintiff must show that he or she engaged in a protected

activity, that he or she was subject to an adverse employment

action, and that there was a causal connection between the two.

Davis v. Team Elec. Co., 520 F.3d 1080, 1093-94 (9th Cir. 2008);

Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).  If a

plaintiff makes out a prima facie case, the burden shifts to the

employer to present a legitimate reason for the adverse

employment action.  Brooks v. City of San Mateo, 229 F.3d 917,

928 (9th Cir. 2000).  Once an employer carries this burden, a

plaintiff seeking to avoid summary judgment must demonstrate a

genuine issue of material fact as to whether the reason advanced

by the employer was pretext.  Id.

On November 28, 2005, Guzman engaged in protected

activity when he complained that he had been sexually harassed by

Canida, his supervisor.  Guzman Decl. ¶ 13; Saiki Decl. ¶¶ 3,4.

See Kendall v. Nevada, No. 08-00521, 2010 WL 276679, at *9 (D.

Nev. Jan. 15, 2010) ("Sexual harassment is a species of gender

discrimination and thus constitutes a violation of Section 2000e-2."). Guzman thus "opposed" an employment practice unlawful under Title VII, and thereby engaged in protected activity. See <u>Knox v. City of Portland</u>, 543 F. Supp. 2d 1238, 1248 (D. Or. 2008) ("Informal complaints to a supervisor constitute protected activity in a retaliation claim" because the complaints essentially oppose an unlawful employment practice).

Guzman argues that he suffered adverse employment actions (1) when Canida regularly changed his work schedule, over-scrutinized his work, and threatened him; (2) when Saiki refused to investigate Guzman's claims; and (3) when Saiki asked Guzman to consent to a background check and then suspended and fired him less than a month after he had filed a sexual harassment claim. Compl. ¶ 41; Pl.'s Mem. Opp. Mot. Summ. J. at 20-21.

The first alleged adverse employment action cannot support Guzman's Title VII claim, as that activity occurred before he engaged in any protected activity. Blockbuster presents legitimate, nondiscriminatory reasons for the other actions.

An "adverse employment action" is an action that is "materially adverse" to a reasonable employee or job applicant. <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (internal quotations omitted). A plaintiff must show that the

11

employer's actions are harmful to the point that they could dissuade a reasonable worker from making or supporting a charge of discrimination.  Id.  Normally, "petty slights, minor annoyances, and simple lack of good manners" will not deter a reasonable worker from making a charge of discrimination, id., while termination, dissemination of a negative employment reference, issuance of an undeserved performance review, and refusal to consider a plaintiff for a promotion may.  Brooks, 229 F.3d at 928-29.

To the extent Guzman argues that Blockbuster, through Canida, one of its Store Managers, retaliated against him by changing his work schedule, over-scrutinizing his work, and threatening him, that argument fails.[5]  Canida, the Store Manager, was suspended the same day that Guzman complained about harassment.  See Saiki Decl. ¶ 6 (noting that Canida was suspended on November 28, 205).  Critical to Guzman's retaliation claim is the notion that his charge of sexual harassment led to an adverse employment action.  However, there can be no causal connection between the sexual harassment charge

---

[5]This allegation, which is in Guzman's memorandum opposing Blockbuster's summary judgment motion, does not appear in Guzman's Complaint.  Guzman's Complaint states, "Plaintiff engaged in protected activity when he reported sexual harassment in the workplace by a Store Manager.  Defendant subjected Plaintiff to adverse actions (e.g.: refusing to investigate Plaintiff's sexual harassment complaint, placing Plaintiff on leave of absence, termination).  The adverse actions were because of Plaintiff's targeted activity."  Compl. ¶ 41.

and Canida's alleged work schedule changes, enhanced scrutiny, or threats, because Canida did not supervise Guzman after he submitted his claim.

The second alleged adverse employment action is Blockbuster's alleged refusal to investigate Guzman's sexual harassment claim.  Although Guzman asserts this in his Complaint, he does not argue it in his memorandum opposing Blockbuster's motion or present any evidence supporting the assertion. Blockbuster establishes that it promptly investigated Guzman's allegations.  Indeed, Saiki immediately suspended Canida pending an investigation of Guzman's allegations of November 28, 2005. Saiki Decl. ¶ 6.  The Employee Separation Form involuntarily discharging Canida was signed by Saiki on November 29, 2005, and was effective December 5, 2005.  Ex. 12, attached to Def.'s Concise Statement.  No evidence suggests that Blockbuster refused to investigate Guzman's sexual harassment claim.

The third alleged adverse employment action that Guzman identifies is Blockbuster's request that he permit a criminal background check, and his subsequent suspension and termination. Guzman's position is that he was fired because he complained about sexual harassment.

Blockbuster contends that it suspended Guzman because he refused to consent to a background check that was part of an independent investigation.  See Ex. 7, attached to Def.'s Concise

Statement (noting that it is a policy violation to fail to comply with an investigation).  Blockbuster says it fired Guzman for "lying on his employment application about having felony convictions, which is a policy violation."  Ex. 18, attached to Def.'s Concise Statement.  Blockbuster's employee handbook, which Guzman received in early November 2005, states that falsification or misrepresentations in applications for employment will result in immediate termination.  Ex. 10 at 50, attached to Def.'s Concise Statement.  Additionally, the application Guzman signed stated that any misrepresentation could result in immediate termination.  Firing an employee for lying on an employment application is a legitimate, nondiscriminatory reason.

The burden shifts to Guzman to prove that Blockbuster's proffered reason is pretextual.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002).  Guzman may establish pretext by "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003).  When a plaintiff submits only circumstantial evidence of pretext, that evidence must be "specific" and "substantial" to defeat summary judgment.  Id.

According to Guzman, "There was no reason to justify terminating [him] for lying on a job application four years

14

earlier in order to obtain employment, which would otherwise have been foreclosed to him by Defendant's automatic exclusion of job applicants with an arrest and court record." Pl.'s Mem. Opp. Mot. Summ. J. at 23.  Guzman appears to be complaining that, had he told the truth, Blockbuster would have automatically discriminated against him based on his criminal record.  Of course, discrimination against felons, the subject of Count II, is not prohibited by Title VII.  See Robinson v. Fleetboston Financial, No. 01-103, 2005 WL 2387839, at *9 (N.D.N.Y. Sept. 28, 2005) (noting that the plaintiff's status as a convicted felon is not protected under Title VII).  Nor is discrimination against felons evidence by itself of retaliation.  Guzman appears to be arguing that Blockbuster violated Title VII by pretending to fire him for being a felon while actually firing him for having complained that Canida was sexually harassing him.  In this regard, it is incumbent on Guzman to make some showing not just that Blockbuster discriminated against felons, but that the discrimination against felons was a cover for Blockbuster's displeasure over the sexual harassment complaint.  Guzman makes no such showing.

Guzman says only that "they terminated me because of my prior conviction, but it didn't have anything to do with my complaint about [Canida]."  Ex. L at 5, attached to Pl.'s Concise Statement.  This is an assertion, not evidence of pretext.

15

Nor is there evidence supporting Guzman's allegation that Blockbuster was more interested in investigating Guzman's lie than in investigating his sexual harassment complaint.

Referring to a document submitted to the Hawaii Civil Rights Commission, Guzman notes, "H.R. Saiki's actions in her timeline submitted to HCRC demonstrates her urgency in ascertaining information related to Plaintiff's arrest and court record." Pl.'s Mem. Opp. Mot. Summ. J. at 23. Saiki's timeline stated that Guzman was placed on "paid suspension pending the processing of his final paycheck" after he refused to permit a background check. The timeline further noted that Canida was placed on "paid suspension pending an investigation." Ex. F at 0011, attached to Pl.'s Concise Statement. What Guzman does not mention is that Saiki suspended Canida promptly after Guzman complained about Canida. While Saiki also suspended Guzman two days after he submitted his sexual harassment claim, Saiki had a reason at the time to be concerned that he was a felon. Id. The timeline does not establish that Blockbuster suspended Guzman because he filed a sexual harassment charge, and instead shows that Blockbuster acted with consistent alacrity when faced with employment concerns.

Guzman is asking this court to permit him to proceed with the unusual argument that Blockbuster allegedly violated state law governing discrimination against felons to hide an

16

alleged violation of Title VII.  But Guzman presents no evidence
of any hiding or pretext.  Guzman might have a stronger case of
pretext if the persons who decided to suspend or terminate him
know about Guzman's convictions before Saiki obtained a
background check but did nothing about the matter until after
Guzman complained about Canida.  But the record contains no
evidence suggesting that.  At most, Guzman's convictions were
known to Alerta, Guzman's friend and the Blockbuster Kapiolani
Store Manager at the time Guzman applied in September 2001, and
possibly some of the other assistant managers.  Ex. C at 58,
attached to Pl.'s Concise Statement.  Guzman's conviction record
was not something Alerta advertised or told anyone about.  Id. at
59.  Alerta left Blockbuster in 2003, and there is no evidence
indicating that any Blockbuster employee in 2005, much less any
employee involved in suspending or terminating Guzman, had
previous knowledge of Guzman's convictions.

     As there is no evidence that Blockbuster's reason was
pretextual, Guzman fails to meet his burden with respect to his
Title VII retaliation claim.  This court grants summary judgment
to Blockbuster on that claim.

     Both parties briefly discuss whether Guzman was
subjected to a hostile work environment in violation of Title
VII.  However, Guzman does not assert a hostile work environment
claim in his Complaint and so may not proceed with this theory.

17

Even if Guzman had brought a hostile work environment claim, that claim would fail.  Title VII prohibits sexual harassment in employment, including conduct that "has the effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a); see also Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002). To evaluate a claim of sexual harassment based on a hostile work environment, a plaintiff must show that he or she was subjected to a hostile work environment caused by sexual harassment, and that the employer is responsible for permitting that environment. See Little, 301 F.3d at 966.

Guzman does not mention, much less establish, that Blockbuster was responsible for a hostile work environment. Blockbuster did not ratify or acquiesce in Canida's conduct. Blockbuster immediately suspended Canida upon receiving Guzman's complaint, then fired her shortly thereafter.

Blockbuster in its reply memorandum asks the court to strike many of Guzman's exhibits as inadmissible.  Because the court grants Blockbuster's motion for summary judgment with respect to Guzman's Title VII claim, the authenticity or admissibility of Guzman's evidence is moot, at least with respect to this claim.

> B.   The Court Orders Further Briefing on Whether it Has
>      Diversity Jurisdiction Over Guzman's Remaining State
>      Law Claims.

Having dismissed the only claim raising a federal

question, this court is left with state law claims.  This court

has the discretion to exercise supplemental jurisdiction over the

state law claims, or to decline to do so.  See United Mine

Workers v. Gibbs, 383 U.S. 715, 726 (1966)(noting that when "the

federal claims are dismissed before trial, even though not

insubstantial in a jurisdictional sense, the state claims should

be dismissed as well").

What is unclear is whether this court also has

diversity jurisdiction, which the court would not have discretion

to decline to exercise.  Diversity jurisdiction requires that

parties be in complete diversity and that the amount in

controversy exceed $75,000.  Matheson v. Progressive Specialty

Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C.

§ 1332(a)(1) ("The district courts shall have original

jurisdiction of all civil actions where the matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and

costs, and is between . . . citizens of different States.").

The Ninth Circuit has held:

> Where it is not facially evident from the
> complaint that more than $75,000 is in
> controversy, the removing party must prove,
> by a preponderance of the evidence, that the
> amount in controversy meets the
> jurisdictional threshold.  Where doubt

19

> regarding the right to removal exists, a case
> should be remanded to state court.  Although
> we have not addressed the types of evidence
> defendants may rely upon to satisfy the
> preponderance of the evidence test for
> jurisdiction, we have endorsed the Fifth
> Circuit's practice of considering facts
> presented in the removal petition as well as
> any summary-judgement-type evidence relevant
> to the amount in controversy at the time of
> removal.  Conclusory allegations as to the
> amount in controversy are insufficient.

Matheson, 319 F.3d at 1090-91 (footnotes and quotations omitted).

This court recognizes that its "obligation to determine that the

requisite jurisdictional amount is present is independent of the

parties' assertions or desires."  14AA Wright, Miller & Cooper,

Fed. Prac. & Proc. § 3702 at 47 (2009).

At the hearing on this motion, the parties disputed

whether this court had diversity jurisdiction over the remaining

claims.  In particular, the parties disputed the amount in

controversy.

As this court is inclined not to exercise supplemental

jurisdiction over the state claims, it is important to the court

to determine whether it has diversity jurisdiction over those

claims.  The parties are ordered to file briefs not exceeding

1500 words, exclusive of attachments, addressing diversity of

citizenship and the amount in controversy.  Such briefs shall be

filed no later than March 1, 2010.  The parties may take

discovery limited to the issue of diversity jurisdiction before

that date.

V.        <u>CONCLUSION.</u>

The court grants Blockbuster's motion for summary judgment with respect to Guzman's Title VII claim.  The court orders the parties to file briefs addressing the court's jurisdiction over the remaining claims.


IT IS SO ORDERED.

 DATED: Honolulu, Hawaii, February 10, 2010




 <u>/s/ Susan Oki Mollway            </u>

Susan Oki Mollway
Chief United States District Judge


<u>Guzman v. Blockbuster, Inc.</u>, Civ. No. 09-00076, SOM/BMK Order Granting In Part Defendant's Motion for Summary Judgment.